UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

HAROLD B. W., SR.,[1]  ) NO. EDCV 19-295-KS
      Plaintiff, )
  v. ) MEMORANDUM OPINION AND ORDER
)
ANDREW M. SAUL,[2] Commissioner )
of Social Security, )
      Defendant. )
_____ )

## INTRODUCTION

Harold B. W., Sr. ("Plaintiff") filed a Complaint on February 15, 2019, seeking review of the denial of his application for Disability Insurance benefits ("DI"). (Dkt. No. 1.) On March 13, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 12-13.) On November 20, 2019, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 21.) Plaintiff seeks an order

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Court notes that Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Andrew M. Saul for Nancy A. Berryhill as the defendant in this action.

reversing and remanding for further administrative proceedings. (Joint Stip. at 16.) The Commissioner requests that the ALJ's decision be affirmed. (*Id.* at 19-20.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF PRIOR PROCEEDINGS

On January 13, 2015, Plaintiff, who was born on December 27, 1957, filed an application for DI.[3] (*See* Administrative Record ("AR") 161-64; Joint Stip. at 2.) Plaintiff alleged disability commencing October 12, 2014, based on the following alleged impairments: diabetes and a weak left arm. (AR 181.) Plaintiff previously worked as a loader/operator (DOT[4] 921.683-042) and a sand plant attendant. (DOT 934.685-014). (AR 22, 182.) After the Commissioner initially denied Plaintiff's application and reconsideration thereof (AR 82-85, 91-95), Plaintiff requested a hearing (AR 97-98). Administrative Law Judge Joel Tracy (the "ALJ") held a hearing on May 1, 2018. (AR 28.) Plaintiff and a vocational expert testified. (AR 28-59.) On June 1, 2018, the ALJ issued an unfavorable decision, denying Plaintiff's application. (AR 12-23.) On January 28, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014. (AR 17.) He found that Plaintiff had not engaged in substantial gainful activity from the alleged October 12, 2014 onset date through his date last insured ("DLI"). (*Id.*) He determined that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy and obesity. (*Id.*) After specifically considering listings 9.00 and 11.14,

---

[3] Plaintiff was 56 years old on the alleged onset date and thus met the agency's definition of a person of advanced age. *See* 20 C.F.R. §§ 404.1563(e).
[4] "DOT" refers to the *Dictionary of Occupational Titles*.

2

the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 19.) The ALJ determined that through the DLI, Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> "[He] is capable of lifting and carrying 25 pounds frequently, and 50 pounds occasionally; [he] can sit for 6 hours in an 8 hour workday with normal breaks; [he] can stand and/or walk for 6 hours in an 8 hour workday with normal breaks; he can no more than frequently push and pull with the bilateral upper extremities; he can no more than frequently climb ladders, ropes, scaffolds, ramps and stairs, and no more than frequently balance, crouch, stoop, kneel, and crawl; he is limited to frequent work at unprotected heights, and frequent handling and fingering bilaterally."

(AR 20.) The ALJ found that Plaintiff was unable to perform his past relevant work. (AR 22.) He then found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant number in the national economy that Plaintiff could perform, including the representative occupations of grocery bagger (DOT 920.687-014), store laborer (DOT 922.687-058), and auto detailer (DOT 915.687-034). (AR 23.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the onset date through his DLI. (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

There are two issues in dispute: (1) whether the ALJ properly considered the record medical evidence in assessing Plaintiff's RFC, and (2) whether the ALJ properly evaluated Plaintiff's credibility. (Joint Stip. at 2.) As discussed below, the ALJ's RFC assessment is supported by substantial evidence that Plaintiff did not suffer from disabling limitations before his DLI. However, the ALJ did not properly evaluate Plaintiff's credibility because he

4

impermissibly discounted Plaintiff's subjective statements solely on the basis that they were inconsistent with the record evidence. Accordingly, remand and reversal are warranted for reevaluation of Plaintiff's subjective statements.

**I.     The ALJ's RFC Assessment**

**A. Legal Standard**

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1); *Reddick*, 157 F.3d at 724; *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Reddick*, 157 F.3d at 722. An ALJ can satisfy the specific and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632; *see* 20 C.F.R. § 416.945(a)(3) (stating that Commissioner will assess RFC "based on all of the relevant medical and other evidence"). Plaintiff has the burden to prove disability before the expiration of disability insured status. *Armstrong v. Comm'r of Soc. Sec. Admin*, 160 F.3d 587, 590 (9th Cir. 1998).

**B. Evidence of Plaintiff's Treatment**

Plaintiff argues that the ALJ failed to consider relevant medical evidence of record predating the December 31, 2014 DLI that supports Plaintiff's claim of disability. As such, the Court bifurcates its summary of the relevant medical evidence to separately discuss the evidence predating and post-dating Plaintiff's DLI.

//

5

### i. Evidence Predating Plaintiff's DLI

There is little record evidence about Plaintiff's alleged impairments predating his DLI. The earliest evidence in the record is from September 24, 2014, when Plaintiff sought treatment for lower extremity muscle cramps, which he had been experiencing for approximately one month. (AR 228.) Plaintiff experienced numbness in his feet. (*Id.*) He was assessed with hypertension, obesity, and type 2 diabetes mellitus. (AR 230.) His doctor educated him about diabetes and blood glucose monitoring. (*Id.*) Although Plaintiff's bloodwork revealed results largely within normal range, he had elevated glucose and A1C blood glucose levels. (AR 231, 233.) At an October 3, 2014 follow-up appointment, Plaintiff reported numbness in his lower extremities and decreased vision. (AR 235.) Plaintiff's feet were not swollen, but the doctor noted peripheral neuropathy and diagnosed him with hypertension, hyperlipidemia, obesity, secondary diabetes mellitus with ophthalmic manifestations, uncontrolled, and type 2 diabetes with neurological complications, uncontrolled. (AR 236-37.) Plaintiff was prescribed various medications and was advised about lifestyle changes to improve his condition. (AR 237.)

On November 12, 2014, Plaintiff sought treatment after spraining his ankle four days earlier. (AR 238.) His doctor noted that his type 2 diabetes with ophthalmic manifestations was better controlled with medication. (AR 239.) He instructed Plaintiff to ice his ankle and gave Plaintiff crutches. (*Id.*) On November 19 and November 26, 2014, Plaintiff continued to complain of right heel and ankle joint pain. (AR 242, 247.) However, Plaintiff's doctor noted on November 19, 2014 that Plaintiff no longer experienced foot muscle cramps or pain, tingling, or numbness in the toes. (AR 242.) On November 26, 2014, Plaintiff experienced foot weakness, and a right ankle x-ray revealed a possible avulsion fracture. (AR 245, 247.) Plaintiff was instructed to rest and ice his foot; he was prescribed a nonsteroidal anti-inflammatory and a cane for ambulation. (AR 244, 249.)

//

### ii. Evidence Following Plaintiff's DLI

On January 6, 2015 (one week after Plaintiff's DLI), Plaintiff visited his doctor for medication refills and his doctor noted that he was "doing well." (AR 251.) Plaintiff's medication was refilled and he was advised about a low fat diet and diabetes care. (AR 253.) A January 28, 2015 x-ray of Plaintiff's right ankle showed a "probable tiny avulsion fracture at the lateral malleolar tip." (AR 309.) This fracture was again documented and was noted as stable in another x-ray on February 25, 2015. (AR 312.) Treatment notes from Arrowhead Regional Medical Center, following a March 25, 2015 x-ray, indicate that the fracture was healing and the ankle mortise intact. (AR 315.)

In May 2015, Ruben Ustaris, M.D., a board eligible internal medicine specialist, performed an internal medicine consultation of Plaintiff. (AR 258-62.) Dr. Ustaris examined Plaintiff and noted that although he used a cane for ambulation, he could walk without a cane with normal gait. (AR 259.) Plaintiff had no muscle spasms, had normal range of motion in his extremities, and had normal motor strength (but with less grip strength in his left upper extremity as compared with his right upper extremity). (AR 259-61.) Plaintiff also had no swelling in his extremities, no joint laxity, intact sensation, and normal reflexes. (AR 260-61.) Dr. Ustaris assessed Plaintiff with diabetes mellitus, controlled with medication; chronic lower back pain with minimal restrictive range of motion on examination; left arm weakness, but without muscle atrophy; hypertension and elevated systolic blood pressure; and hyperlipidemia. (AR 261.) Dr. Ustaris opined that Plaintiff could perform medium work with the following functional restrictions: he could lift and carry 50 pounds occasionally and 25 pounds frequently; push and pull on a frequent basis; walk and stand six hours out of an eight hour day; sit six hours out of an eight hour day; ambulate without an assistive device; climb, balance, bend, stoop, kneel, and crawl frequently; walk on uneven terrain, climb ladders, and work at heights frequently; see and hear without restrictions; and finely manipulate with his right hand without restrictions and use the left hand for fine and gross manipulation on a

frequent basis. (*Id.*) The record indicates that by May 29, 2015, Plaintiff's ankle fracture had healed and no degenerative changes were present. (AR 263.)

In September 2015, Plaintiff was evaluated by Jeffrey Wheeler, M.D., a state agency medical consultant, who made findings in connection with Plaintiff's initial disability determination. (AR 64-68.) Dr. Wheeler reviewed Plaintiff's medical records between September 2014 and January 2015. (AR 65.) He concluded that Plaintiff had a medically determinable severe impairment in the form of peripheral neuropathy. (AR 65-66.) His impairment could reasonably be expected to produce his pain and other symptoms and his statements about the intensity, persistence, and functionally limiting effects of his symptoms were substantiated by the objective medical evidence. (AR 66.) Dr. Wheeler opined that Plaintiff had functional restrictions identical to those that Dr. Ustaris assessed. (AR 66-68.) Dr. Wheeler gave Dr. Ustaris's opinion great weight and found that a medium work RFC was consistent with the medical evidence. (AR 68.) He found that a cane was not medically necessary, and although Plaintiff had decreased grip strength on the left side compared to the right, this did not significantly affect Plaintiff's ability to lift, carry, or finely manipulate. (*Id.*)

On October 13, 2015, an x-ray of Plaintiff's left elbow revealed minimal arthritic degenerative changes, but no significant effusion, acute fracture, or destructive changes. (AR 291.) An x-ray of Plaintiff's lumbar spine taken on the same day revealed minimal to mild degenerative joint disease throughout the lumbar spine, especially in the lower lumbar spine, with probable neural foraminal compromise at L4-L5 and LF-S1, but no acute compression fractures or subluxation. (AR 292.)

In January 2016, Plaintiff's disability application was reviewed by K. Vu, D.O., a state agency medical consultant, in connection with Plaintiff's decision on reconsideration. (AR 75-79.) Dr. Vu drew the same general conclusions and opined that Plaintiff had the same functional restrictions as Dr. Wheeler. (*See id.*) Dr. Vu concluded that Plaintiff's condition

resulted in some limitations in his ability to perform work-related activities, and while he could not perform his past relevant work, he could still perform "less demanding work." (AR 80.) Accordingly, Plaintiff's condition was not severe enough to preclude him from working. (*Id.*)

**C. The ALJ's Decision**

The ALJ found that Plaintiff could perform medium work with the following limitations: "[he] is capable of lifting and carrying 25 pounds frequently, and 50 pounds occasionally; [he] can sit for 6 hours in an 8 hour workday with normal breaks; [he] can stand and/or walk for 6 hours in an 8 hour workday with normal breaks; he can no more than frequently push and pull with the bilateral upper extremities; he can no more than frequently climb ladders, ropes, scaffolds, ramps and stairs, and no more than frequently balance, crouch, stoop, kneel, and crawl; he is limited to frequent work at unprotected heights, and frequent handling and fingering bilaterally." (AR 19-20.) The ALJ made the following findings in support of his assessment.

The ALJ found that prior to Plaintiff's DLI, the record does not indicate that Plaintiff experienced significant symptoms other than those related to his diabetes/neuropathy. (AR 20-21.) The record suggested relatively mild symptoms, which would not have been expected to prevent Plaintiff from performing a wide range of sustained physical activity. (AR 21.) The ALJ then "extended some benefit of the doubt" to Plaintiff regarding his opposition to Dr. Ustaris's examination, as it was performed five months after Plaintiff's DLI; however, the ALJ concluded that the examination was "comprehensive and took into account [Plaintiff's] allegations of neuropathy affecting the legs and arms." (*Id.*) By the time Plaintiff's ankle fracture had healed, he no longer needed a cane to ambulate, there were no significant strength or sensation deficits, and his clinical presentation was not dissimilar to his presentation before he had broken his ankle in November 2014. (*Id.*) Accordingly, the ALJ gave Dr. Ustaris's opinion significant weight because it was consistent with the pre-DLI evidence, given that,

prior to Plaintiff's DLI, "except for a less than 12 month period following the ankle fracture," he "exhibited no significant gait loss, strength loss or sensation loss." (*Id.*) The ALJ thereby found that there was no reasonable indication in the evidence prior to or since the DLI that Plaintiff would have required additional or more restrictive limitations before his DLI. (*Id.*)

Further, the ALJ gave the opinions of the state agency medical consultants significant weight because they were consistent with the relevant evidence and concurred with Dr. Ustaris's opinion, who made similar functional conclusions about the effects of Plaintiff's impairments. (*Id.*) The ALJ concluded that there was "otherwise no medical opinion evidence which indicates that the above RFC is not an accurate portrayal of [Plaintiff's] capacity for work-related activities." (AR 22.)

**D. Analysis**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to consider record evidence that supports Plaintiff's disability claim. (Joint Stip. at 5.) Specifically, Plaintiff contends that the ALJ's conclusion that he could perform medium work is not consistent with someone suffering from diabetes and neuropathy; the ALJ erred in rejecting evidence of Plaintiff's condition predating his DLI; the medical evidence post-dating the DLI reinforces the disabling limitations Plaintiff alleges beset him; and the ALJ erred in failing to include a need for a cane in his RFC assessment. (Joint Stip. at 5-7.) For the following reasons, Plaintiff's arguments are unpersuasive and the Court finds that ALJ's RFC assessment is supported by substantial evidence.

First, the fact that Plaintiff suffers from a severe impairment does not necessarily mean that impairment is disabling—an impairment alone is not "*per se* disabling"; rather, "there must be proof of the impairment's disabling severity." *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982). While it is undisputed that Plaintiff had severe impairments of diabetes

and neuropathy, neither the evidence predating Plaintiff's DLI nor the evidence following it support the inference that those impairments were disabling to a degree that Plaintiff could not perform work. The record shows that Plaintiff's impairments did not result in any serious deficits with walking, standing, sitting, lifting, or other physical activity. Specifically, the record evidence indicates that his physical examinations between September and December 2014 produced results within the normal range. (AR 231, 233, 236-37, 242, 247.) Although Plaintiff experienced some symptoms associated with diabetes and neuropathy during that period, his condition was noted as improving over time and controlled with treatment. (AR 239, 242.)

Evidence post-dating Plaintiff's DLI also shows that while Plaintiff continued to have diabetes and neuropathy, those conditions were noted as stable with treatment, Plaintiff had largely normal examination results, and he was noted as doing well. (AR 251, 253, 312.) Although Plaintiff also suffered from an avulsion fracture in the months surrounding his DLI, resulting in his temporary use of a cane to ambulate, the record reflects that Plaintiff recovered from that fracture within six months such that use of a cane was no longer medically necessary. (AR 68, 244-45, 247, 249, 259, 263, 309, 312, 315.) The evidence shows that Plaintiff's fracture improved over time and after it healed, Plaintiff had no degenerative changes in his ankle, muscle spasms, muscle atrophy, swelling in his extremities, or other significant impairments. (AR 260-63, 291-92.) Accordingly, the record does not support the conclusion that Plaintiff had more significant limitations than those assessed by the ALJ.

Second, the ALJ did not reject the evidence in the record predating Plaintiff's DLI. Rather, the ALJ considered that evidence and correctly found that it did not establish that Plaintiff's impairments were disabling. (AR 20-21.) To the extent Plaintiff disagrees with the ALJ's evaluation of the evidence, Plaintiff's mere disagreement does not constitute a basis for reversal. *See Burch*, 400 F.3d at 679 (holding that where evidence is susceptible to more than one rational interpretation, ALJ's conclusion must be upheld).

Third, as discussed above, the medical evidence post-dating the DLI does not suggest that Plaintiff had disabling limitations. Plaintiff contends that the ALJ improperly relied on the opinions of Dr. Ustaris and the state agency consultants because they offered their opinions after Plaintiff's DLI. (Joint Stip. at 5.) This argument lacks merit. An ALJ must "consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). This includes medical opinions made after the DLI that evaluate a "preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); *see also Willey v. Astrue*, 2010 WL 3521786, at * 3 (C.D. Cal. Sept. 7, 2010) (finding ALJ's failure to address doctor's opinion from nearly two years after DLI was error because opinion was "arguably relevant" to issue of disability). Here, the ALJ did not err in considering Dr. Ustaris's opinion because Dr. Ustaris evaluated Plaintiff's impairments which had affected him before his DLI. The ALJ explicitly recognized that Dr. Ustaris conducted his examination several months after Plaintiff's DLI and reconciled that with the fact that Plaintiff's clinical presentation to Dr. Ustaris appeared similar to his presentation to his doctors prior to his DLI. (AR 21.) The ALJ's conclusion is supported by the record evidence, which shows that Plaintiff's condition remained stable between October 2014 and May 2015 (*compare* AR 235-39, 242-49 *to* AR 258-62). *See* 20 C.F.R. § 404.1527(c)(4) (stating that the weight an ALJ accords to a medical source opinion depends, in part, on the consistency of that opinion with the record evidence as a whole).

As to the state agency consultants, because their opinions were substantially similar to the opinion of Dr. Ustaris, and the evidence does not suggest that Plaintiff's condition significantly worsened in the intervening time between their evaluations, the ALJ likewise did not err in relying on the consultants' opinions on the basis that they were consistent with Dr. Ustaris's opinion. (AR 21.) The stage agency consultants also relied on evidence predating Plaintiff's DLI. (AR 65.) In addition, an ALJ may rely on a non-treating medical source opinion issued after a claimant's DLI where the medical source relies on medical evidence from the insured period. *See Edwards v. Colvin*, 602 F. App'x 661, 663 (9th Cir. 2015); *see*

*also Lester*, 81 F.3d at 832. To the extent Plaintiff disagrees with the ALJ's evaluation of the evidence in the record post-dating his DLI, that is not a basis for reversal. *See Burch*, 400 F.3d at 679.

Finally, the ALJ did not err in failing to include in his RFC assessment the limitation that Plaintiff required a cane. Plaintiff was prescribed a cane for ambulation in November 2014 after he fractured his ankle. (AR 244, 249.) In May 2015, Dr. Ustaris noted that while Plaintiff still used a cane, his fracture had healed and he had normal gait without using a cane. (AR 259.) And in September 2015, Dr. Wheeler found that use of a cane was no longer medically necessary. (AR 68.) The ALJ specifically qualified his RFC assessment by noting that Plaintiff had more severe restrictions after his ankle fracture; however, those restrictions did not persist longer than 12 months and, thus, Plaintiff failed to meet the duration requirement for disability associated with his fractured ankle. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (requiring an impairment to have lasted or be expected to last for a continuous period of not less than 12 months for the claimant to be found disabled). Because Plaintiff did not require a cane to ambulate for a continuous period of not less than 12 months, the ALJ did not err by omitting Plaintiff's use of a cane in his assessment of Plaintiff's limitations.

In sum, substantial evidence supports the ALJ's RFC assessment and his determination that Plaintiff did not suffer from a disability prior to his DLI. Plaintiff's arguments to the contrary do not alter that conclusion. Accordingly, remand is not warranted on this issue.

//
//
//
//
//
//

## II. The ALJ's Evaluation of Plaintiff's Subjective Statements

### A. Legal Standard

An ALJ must make two findings before discounting a claimant's statements regarding the severity and persistence of her symptoms. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's [statements] regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In March 2016, the Commissioner promulgated Social Security Ruling ("SSR") 16-3p, which "makes clear what [Ninth Circuit] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements about her pain and limitations by referring to the factors set forth in 20 C.F.R. § 404.1529(c)(3), which include: the claimant's daily activities; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other

14

factors concerning an individual's functional imitations and restrictions." SSR 16-3p. However, longstanding Ninth Circuit precedent prohibits the Commissioner from rejecting subjective pain statements on the sole ground that it is not fully corroborated by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

### B. Plaintiff's Subjective Statements

In a February 2015 function report, Plaintiff stated that he experienced weakness in his left arm, numbness in his fingers, pain as a result of diabetes, and his ankle was in a cast. (AR 219.) He took care of his dog on his own, had no problem caring for himself, and he did not need assistance taking his medications. (AR 220-21.) He prepared meals for himself twice daily, and cleaned the house and did laundry when possible. (AR 221-22.) He went outside a few times each day, drove when possible, and went grocery shopping a few times each week. (AR 222.) Plaintiff stated that his impairments caused pain to his left arm, causing him to drop things, and walking too far hurt his feet. (AR 224.) He could walk for a few blocks before needing to rest for 10 to 15 minutes. (*Id.*) Additionally, Plaintiff stated that he was prescribed a cane in November 2014 to assist him when he walked. (AR 225.)

In May 2018, Plaintiff testified at the hearing before the ALJ about his condition prior to his DLI. Plaintiff stated that in the months preceding his DLI, he drove to the store and doctor, but could not drive for longer than half an hour without getting cramps and having back pain from sitting. (AR 37.) He testified that he experienced cramps in his back, toes, ankles, calves, and both hands; and numbness and pain in his legs and toes. (AR 37, 40-41.) Prior to his DLI, Plaintiff said that he experienced vision problems, which led to his discovery that he had diabetes. (AR 38-40.) Plaintiff testified, "I went and had my eyes checked by an eye doctor and he told me to go to a doctor because of diabetes. Other than that, I wouldn't have known anything." (AR 40.) He described his trouble lifting, especially with his left arm,

15

and walking up stairs. (AR 39, 45-46.) Due to a childhood accident, Plaintiff also experienced numbness and cramping in his left fingers, which worsened as he aged. (AR 41-42.)

Plaintiff stated that he had been using a cane since he was prescribed one for his ankle fracture in November 2014. (AR 43, 46-47.) The cane helped him balance when his feet became numb, and when he experienced dizziness and blurriness. (*Id.*) In 2014, he could not stand for a long time. (AR 44.) However, Plaintiff also stated that he did not use the cane around the house—he would cook meals and use the bathroom without a cane; but he would use it when he went to a far bedroom or went outside. (AR 47.) He could not walk around the block or down the street and could not walk downstairs without using his cane. (*Id.*) When he stopped working, Plaintiff's typical day consisted of watching television and staying in his room. (AR 48.) He went grocery shopping with a motorized shopping cart and could lift and carry grocery bags if they were less than 30 or 40 pounds. (AR 49.) He received assistance from his mother and brother, with whom he lived at the time. (AR 49-50.) He did not do yardwork, and could clean for fifteen (15) minutes before his back began hurting. (AR 50.)

**C. The ALJ's Credibility Analysis**

The ALJ cited the two-step procedure, but did not explicitly apply it. (*See* AR 20.) Instead, the ALJ discussed some of Plaintiff's statements from his hearing testimony about the nature of his symptoms before his DLI, summarizing that Plaintiff maintained that even prior to his DLI, he "experienced serious physical limitations and would have been unable to perform most physical work on a sustained, fulltime basis." (*Id.*) The ALJ concluded that although Plaintiff may have developed symptoms and impairments that might be consistent with the serious limitations he alleged, the record did not suggest that, prior to his DLI, he experienced significant symptoms other than those related to his diabetes and neuropathy. (AR 20-21.) The ALJ noted that the evidence *predating* Plaintiff's DLI showed relatively mild results and overall, gave "no indication whatsoever that [Plaintiff's] diabetes or

16

peripheral neuropathy resulted in any serious problems with walking, standing, sit [sic], lifting or other physical activities generally." (AR 21.) The ALJ also found that the record evidence suggested "relatively mild symptoms which would not have been expected to prevent [Plaintiff] from performing a good range of sustained physical activities." (*Id.*)

### D. Analysis

Plaintiff argues that, while the ALJ's reason for discounting Plaintiff's subjective statements is unclear, he appears to suggest that Plaintiff's statements are not supported by the objective medical evidence, which, alone, is an insufficient basis to discount those statements. (Joint Stip. at 10-11.) He further contends that the ALJ failed to identify which testimony he found incredible. (*Id.* at 11.) Finally, Plaintiff reiterates that prior to his DLI, his impairments substantially limited his ability to perform and persist at normal activities of daily living and work functioning. (*Id.* at 12-13.) In opposition, the Commissioner contends that the ALJ discounted Plaintiff's subjective statements on the bases that objective medical and opinion evidence did not support Plaintiff's allegations of disabling symptoms *and* the fact that Plaintiff's reported symptoms were "relatively mild" and would not have prevented him from performing a good range of sustained physical activities. (*Id.* at 14-15.)

The ALJ's credibility analysis in this case is troubling. As an initial matter, while he cited the boilerplate language about the two-step procedure (AR 20), he does not appear to have used that procedure to analyze Plaintiff's claims. But even assuming the ALJ did find that Plaintiff produced objective evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, the ALJ provided only one reason for discounting Plaintiff's subjective statements: the statements' inconsistency with the medical evidence in the record of Plaintiff's condition prior to his DLI. The ALJ therefore erred because, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's

subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680; *Rollins*, 261 F.3d at 857; *see* 20 C.F.R. § 1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). There may be additional reasons for discounting Plaintiff's statements that find support in the record, but the ALJ did not cite them and the Court will not conjure them *ab initio*. *See Orn*, 495 F.3d at 630 (holding that the Court will "not affirm the ALJ on a ground upon which he did not rely"). Accordingly, the ALJ's failure to discount Plaintiff's subjective statements based on additional permissible reasons, supported by substantial evidence, constitutes legal error and warrants a remand of this case to the Agency for proper evaluation of Plaintiff's subjective statements.

The Commissioner contends that the ALJ provided a second reason for discounting Plaintiff's subjective statements: the relative mildness of Plaintiff's symptoms and the fact that those symptoms would not have prevented Plaintiff from performing a range of sustained physical activities. (Joint Stip. at 14 (citing AR 21).) However, upon reviewing that portion of the ALJ's decision, the Court finds that that comment about the severity of Plaintiff's symptoms and their impact on Plaintiff's physical abilities was a conclusion drawn by the ALJ about the medical evidence, not an assessment of Plaintiff's credibility. As discussed above, the record does in fact suggest that Plaintiff's symptoms were relatively mild, and it supports the RFC the ALJ assessed and Plaintiff's arguable ability to perform a good range of sustained physical activity. However, it is well established that because a claimant's "pain testimony may establish greater limitations than can medical evidence alone," *Burch*, 400 F.3d at 680, the fact that the record evidence showed mild symptoms that are consistent with a claimant's ability to perform a range of physical activity cannot alone serve as a basis for discounting Plaintiff's credibility.

//

Accordingly, the ALJ failed to properly evaluate Plaintiff's subjective statements in accordance with the relevant factors set out in the regulations. 20 C.F.R. § 404.1529(c). Thus, remand for reevaluation of Plaintiff's subjective statements is warranted.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: February 10, 2020

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE